IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FERRER & POIROT GP, FERRER<br>& POIROT PC D/B/A FERRER POIROT<br>WANSBROUGH FELLER DANIEL ABNEY<br>AND 2603 OAK LAWN LP,<br>     PLAINTIFFS,<br><br>V.<br><br>THE CINCINNATI INSURANCE CO.,<br>     DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§   CIVIL CASE NO. 3:20-CV-3286-L-BK<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference,* Doc. 22, now before the Court is *Defendant The Cincinnati Insurance Company's Motion to Dismiss*. Doc. 12. For the reasons that follow, it is recommended that the motion be **GRANTED**.

**A.   PROCEDURAL HISTORY**

In the amended complaint, Plaintiffs assert that they operate a law firm at two locations (the "Insured Properties"), which they insured with Defendant for indemnity from business income losses and expenses related to the Insured Properties (the "Policy"). Doc. 6 at 3-4. Plaintiffs allege that the public emergency resulting from the COVID-19 pandemic and subsequent public health orders caused them to shut down the majority of their in-office operations and incur expenses associated with permitting their employees to work remotely. Doc. 6 at 19-20. Plaintiffs assert that these circumstances caused them to suffer "physical losses," such as their inability to fully utilize their office spaces and need to purchase masks, air purifiers and the like, which they contend are covered by the Policy. Doc. 6 at 17-25.

Defendant denied coverage, and this cause of action for breach of contract ensued. Doc. 6 at 25-26. Plaintiffs also seek a declaratory judgment to the effect that their losses are covered by the Policy's "physical loss" clause or, alternatively, that the Policy is ambiguous as to what constitutes a "physical loss." Doc. 6 at 26. Defendant now moves to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 18.

**B. APPLICABLE LAW**

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). "[U]nless the pleadings on their face reveal beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief," a Rule 12(b)(6) dismissal is inappropriate. *Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 591, 594 (5th Cir. 1991).

To state a claim for breach of contract under Texas state law, the following elements must be pled: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (citation omitted).

\#

C. PARTIES' ARGUMENTS

Defendant argues that Plaintiffs' complaint should be dismissed because (1) they do not allege that they sustained any direct *physical* loss or damage to the Insured Properties that potentially would be covered by the Policy, and (2) the civil authorities' "shelter in place" orders invoked during the pandemic still permitted Plaintiffs to remain open and provide services at the Insured Properties. Doc. 12 at 6, 9-20, 22-26 (collecting cases). Defendant further asserts that the Policy language is not ambiguous with respect to its definition of "loss." Doc. 12 at 20-22.

Plaintiffs respond that they have adequately alleged the Insured Properties suffered a "physical" loss because they pled the "'physical' properties of the COVID-19 virus, the 'physical' symptoms or effects/harm of the virus, the 'physical' spread or transmission of the virus, 'physical' ways and means to prevent the spread of the virus, and the 'physical' harm, loss and/or loss of use ('damage')" to the Insured Properties. Doc. 14 at 8 (footnotes omitted). Plaintiffs contend that the "damage" to the Insured Properties required them to repair, restore, or remediate the premises in order to comply with civil government orders and use physical measures such as Plexiglass shields, hand sanitizer, and gloves to render the properties usable. Doc. 14 at 9-10. Plaintiffs also point to an amendment to the Policy which dropped the word "physical" as a requirement for coverage, arguing that they need only allege a "direct loss" to the Insured Properties. Doc. 14 at 7. Alternatively, Plaintiffs argue that the Policy is ambiguous as to whether a "physical" loss is required because an amendment to the Policy broadened the definition of "loss." Doc. 14 at 11-12 (pointing to Policy language stating that "loss has a broader sense of 'loss' when used as a defined term.").

D. ANALYSIS

The Policy language at issue provides as follows:

#

> **b. Business Income and Extra Expense** . . .
>
> **(1) Business Income**
>
> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. . .
>
> **(2) Extra Expense**
>
> **(a)** We will pay Extra Expense you sustain during the "period of restoration." Extra Expense means necessary expenses you sustain . . . during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Case of Loss. . .
>
> **(3) Civil Authority**
>
> When a Covered Cause of Loss causes damages to property other than Covered Property at a "premises," we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises," provided that both of the following apply:
>
> **(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
>
> **(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Doc. 6 at 88-89. The Policy defines "Covered Cause of Loss" as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." Doc. 6 at 75. In turn, "loss" is defined as "accidental physical loss or accidental physical damage." Doc. 6 at 108.

As an initial matter, the Court readily concludes that the term "loss" is not ambiguous. "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning.

4

*Id.* Conversely, if an insurance contract is subject to more than one reasonable interpretation, it is ambiguous and the interpretation that most favors coverage for the insured must be adopted. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) (noting that "[a] contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning.").

Here, Plaintiffs misinterpret the "Descriptions of Revision" summary which refers to the "broadening" of the term "loss." Specifically, while the revision "dropp[ed] the "unneeded word 'physical'" from the phrase "direct physical loss," it went on to specify that "loss" is an "accidental physical loss or accidental physical damage." Doc. 6 at 111; *see also* Doc. 6 at 115 (amended Policy provision defining "Loss" as "accidental physical loss or accidental physical damage.") (emphasis in original)). In a recent case with similar policy language, this Court dismissed the claims filed by a private wine club for business losses it suffered after it was ordered to close due to COVID-19. *See Graileys Inc. v. Sentinel Insurance Co. Ltd.*, No. 3:20-CV-01181-M, 2021 WL 3524032, at *1 (N.D. Tex. Aug. 19, 2021) (Lynn, C.J.). There, the insurance policy covered "direct physical loss or physical damage." *Id.* at 1. The Court held that the "direct physical loss" requirement of the policy "possesses a reasonable, unambiguous interpretation" and could not be read to cover losses caused by an order from civil authorities to shut down due to COVID-19. *Id.* at 1-2. The same holds true here.

Having concluded that the Policy is not ambiguous, the Court now considers whether Plaintiffs' damages are covered under its terms. Unsurprisingly, Plaintiffs are not the first to attempt to establish insurance coverage because COVID-19 negatively impacted their business. But courts have uniformly rejected these attempts to expand the definition of what constitutes a "physical loss." The Court of Appeals for the Fifth Circuit has described the threshold concept

#

of physical loss/damage to a covered property as follows:

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2005)). While the Fifth Circuit has not yet applied this description in the context of COVID-19, many district courts within this circuit have.

Recently, this Court considered the same policy language as that in this case, to wit: "Covered Cause of Loss" defined as a "direct 'loss,'" and "loss" defined as an "accidental physical loss or accidental physical damage." *Vandelay Hospitality Grp. LP v. Cincinnati Ins. Co.*, No., 2021 WL 2936066, at *3 (N.D. Tex. July 13, 2021) (Fitzwater, J.). In *Vandelay*, the Court held the policy's language was unambiguous and coverage did not apply despite the plaintiff's argument that the coronavirus physically caused property damage by attaching to surfaces for prolonged periods of time and infecting its employees. *Id.* at *2, 6-7 (noting that plaintiff had not alleged that COVID-19 itself "threatened the physical structures" of the business); *see also PSG-Mid Cities Med. Ctr., LLC v. Jarrell*, No., 2021 WL 1894696, at *4 (N.D. Tex. May 11, 2021) (Brown, J.) (holding that the term "physical loss of or damage" requires actual physical alteration to the insured property, and temporary COVID-19 restrictions did not physically alter property). Courts in every other district in Texas have reached the same conclusion. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 359-60 (W.D. Tex. 2020); *DZ Jewelry, LLC, d/b/a Zadok Jewelers v. Certain Underwriters at Lloyds London*, No. CV H-20-3606, 2021 WL 1232778, at *4-6 (S.D. Tex. Mar. 12, 2021); *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *3 (E.D. Tex. Dec. 7, 2020). As

this conclusion is widespread, accepted, and persuasive, the Court concludes that here, Plaintiffs' breach of contract claim is also subject to dismissal.

Finally, Plaintiffs' request for declaratory relief also fails. The Declaratory Judgment Act provides that a federal court may declare the rights and legal relations of any interested party. *See* 28 U.S.C. § 2201(a). The availability of a declaratory judgment, however, depends upon the existence of an underlying judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). In other words, a declaratory judgment action is merely a vehicle that allows a party to obtain an "early adjudication of an actual controversy" arising under other substantive law—it cannot stand on its own. *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990).

Because Plaintiffs did not assert a plausible substantive claim in their complaint, they are not entitled to relief under the Declaratory Judgment Act. *See Green v. JPMorgan Chase Bank, N.A.*, 937 F.Supp.2d 849, 864 (N.D. Tex. 2013) (declining to entertain plaintiff's request for a declaratory judgment when he failed to overcome summary judgment motion on his substantive claims). Consequently, Plaintiffs' declaratory relief claim should also be dismissed.

E. **LEAVE TO AMEND**

A court may dismiss a complaint that fails to meet the pleading requirements, but "should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000). Plaintiffs have previously amended their complaint and do not request leave to amend again in response to Defendant's dismissal motion. Indeed, Plaintiffs are represented by able counsel who maintains that they have sufficiently pled their claims and they are not subject to dismissal. *See* Doc. 14 at 8-10, 17-18, 20. Therefore, it

appears that Plaintiffs have pled their best case at this point. *See, e.g.*, Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam) (holding that dismissal of even a *pro se* case with prejudice is appropriate if the court determines that the plaintiff has alleged his best case).  As such, allowing Plaintiffs leave to amend their complaint again would be futile, cause needless delay, and waste the Court's resources.  Accordingly, Plaintiffs' complaint should be dismissed with prejudice. *See* PSG-Mid Cities Med. Ctr., LLC, 2021 WL 1894696, at *5 (declining to allow plaintiff to amend complaint in light of its failure to allege that its losses were covered by insurance policy and thus any attempt to amend would be futile).

**F.  CONCLUSION**

For the reasons set forth above, *Defendant The Cincinnati Insurance Company's Motion to Dismiss*, Doc. 12, should be **GRANTED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on September 1, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

#

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

#

#